UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| MICHELLE B. | : |
| | : |
| v. | :     C.A. No. 24-0226-MSM |
| | : |
| LELAND C. DUDEK, Acting Commissioner Social Security Administration | : <br> : <br> : |

**REPORT AND RECOMMENDATION**

Lincoln D. Almond, United States Magistrate Judge

This matter is before the Court for judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"), 42 U.S.C. § 405(g). Plaintiff filed her Complaint on June 6, 2024, seeking to reverse the Decision of the Commissioner. On November 4, 2024, Plaintiff filed a Motion for Reversal of the Disability Determination of the Commissioner of Social Security. (ECF No. 9). On December 2, 2024, Defendant filed a Motion to Affirm the Commissioner's Decision. (ECF No. 11). Plaintiff filed a Reply Brief on January 30, 2025. (ECF No. 13).

This matter has been referred to me for preliminary review, findings, and recommended disposition. 28 U.S.C. § 636(b)(1)(B); LR Cv 72. Based upon my review of the record, the parties' submissions, and independent research, I find that there is substantial evidence in this record to support the Commissioner's decision and findings that Plaintiff is not disabled within the meaning of the Act. Consequently, I recommend that Plaintiff's Motion for Reversal (ECF No. 9) be DENIED and that the Commissioner's Motion to Affirm (ECF No. 11) be GRANTED.

### I.     PROCEDURAL HISTORY

Plaintiff filed an application for DIB on November 12, 2020. (Tr. 621-622). The application was denied initially on February 15, 2021 (Tr. 179-182) and on reconsideration on March 22, 2021. (Tr. 184-188). Plaintiff requested an Administrative Hearing which was held on November 13, 2023, after Appeals Council Remand, before Administrative Law Judge Kate Dana (the "ALJ"). Plaintiff, represented by counsel, and a Vocational Expert ("VE") appeared and/or testified. (Tr. 46-89). The ALJ issued an unfavorable decision to Plaintiff on January 31, 2024. (Tr. 14-33). The Appeals Council denied Plaintiff's request for review on April 8, 2024. (Tr. 1-3). Therefore, the ALJ's decision became final. A timely appeal was then filed with this Court.

### II.    THE PARTIES' POSITIONS

Plaintiff argues that the ALJ failed to properly evaluate all of the opinion evidence, failed to properly evaluate her credibility, and failed to reopen the prior applications.

The Commissioner disputes Plaintiff's claims and argues that they are all essentially improper attempts to relitigate this claim for a remote 2007 period and have this Court reweigh the evidence in a manner more favorable to her.

### III.   THE STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. Ortiz v. Sec'y of HHS, 955 F.2d 765, 769 (1st Cir. 1991) (per curiam); Rodriguez v. Sec'y of HHS, 647 F.2d 218, 222 (1st Cir. 1981).

Where the Commissioner's decision is supported by substantial evidence, the court must affirm, even if the court would have reached a contrary result as finder of fact. Rodriguez Pagan v. Sec'y of HHS, 819 F.2d 1, 3 (1st Cir. 1987); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991). The court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. Frustaglia v. Sec'y of HHS, 829 F.2d 192, 195 (1st Cir. 1987); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied).

The court must reverse the ALJ's decision on plenary review, however, if the ALJ applies incorrect law, or if the ALJ fails to provide the court with sufficient reasoning to determine that he or she properly applied the law. Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam); accord Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). Remand is unnecessary where all of the essential evidence was before the Appeals Council when it denied review, and the evidence establishes without any doubt that the claimant was disabled. Seavey v. Barnhart, 276 F.3d 1, 11 (1st Cir. 2001) citing, Mowery v. Heckler, 771 F.2d 966, 973 (6th Cir. 1985).

The court may remand a case to the Commissioner for a rehearing under sentence four of 42 U.S.C. § 405(g); under sentence six of 42 U.S.C. § 405(g); or under both sentences. Seavey, 276 F.3d at 8. To remand under sentence four, the court must either find that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim. Id.; accord Brenem v. Harris, 621 F.2d 688, 690 (5th Cir. 1980) (remand appropriate where record was insufficient to affirm, but also was insufficient for district court to find claimant disabled).

Where the court cannot discern the basis for the Commissioner's decision, a sentence-four remand may be appropriate to allow her to explain the basis for her decision. Freeman v. Barnhart, 274 F.3d 606, 609-610 (1st Cir. 2001). On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. Diorio v. Heckler, 721 F.2d 726, 729 (11th Cir. 1983) (necessary for ALJ on remand to consider psychiatric report tendered to Appeals Council). After a sentence four remand, the court enters a final and appealable judgment immediately, and thus loses jurisdiction. Freeman, 274 F.3d at 610.

In contrast, sentence six of 42 U.S.C. § 405(g) provides:

> The court...may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding;

42 U.S.C. § 405(g). To remand under sentence six, the claimant must establish: (1) that there is new, non-cumulative evidence; (2) that the evidence is material, relevant and probative so that there is a reasonable possibility that it would change the administrative result; and (3) there is good cause for failure to submit the evidence at the administrative level. See Jackson v. Chater, 99 F.3d 1086, 1090-1092 (11th Cir. 1996).

A sentence six remand may be warranted, even in the absence of an error by the Commissioner, if new, material evidence becomes available to the claimant. Id. With a sentence six remand, the parties must return to the court after remand to file modified findings of fact. Id. The court retains jurisdiction pending remand and does not enter a final judgment until after the completion of remand proceedings. Id.

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505. The impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

### A.     Opinion Evidence

For applications like this one, filed on or after March 27, 2017, the Administration has fundamentally changed how adjudicators assess opinion evidence. The requirements that adjudicators assign "controlling weight" to a well-supported treating source's medical opinion that is consistent with other evidence, and, if controlling weight is not given, must state the specific weight that is assigned – are gone. See Shaw v. Saul, No. 19-cv-730-LM, 2020 WL 3072072, *4-5 (D.N.H. June 10, 2020) citing Nicole C. v. Saul, Case No. cv 19-127JJM, 2020 WL 57727, at *4 (D.R.I. Jan. 6, 2020) (citing 20 C.F.R. § 404.1520c(a)). Under the newly applicable regulations, an ALJ does not assign specific evidentiary weight to any medical opinion and does not defer to the opinion of any medical source (including the claimant's treating providers). 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the ALJ evaluates the relative persuasiveness of the medical evidence in terms of five specified factors. Id.

The five factors the ALJ considers in evaluating the persuasiveness of a medical opinion are supportability (the relevance of the opinion's cited objective medical evidence), consistency (how consistent the opinion is with all of the evidence from medical and non-

medical sources), treatment/examining relationship (including length of treatment relationship, frequency of examinations, purpose of treatment relationship, and existence and extent of treatment/examining relationship), specialization (the relevance of the source's specialized education or training to the claimant's condition), and what the Administration refers to as "other factors" (the medical source's familiarity with the claimant's medical record as a whole and/or with the Administration's policies or evidentiary requirements). Shaw, 2020 WL 3072072 at *4 citing 20 C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5) (emphasis supplied). Of the five factors, the "most important" are supportability and consistency. Id. §§ 404.1520c(a), 404.1520c(b)(2), 416.920c(a), 416.920c(b)(2).

While the ALJ must consider all five of the factors in evaluating the persuasiveness of medical evidence, when preparing the written decision, the ALJ is, in most cases, only required to discuss application of the supportability and consistency factors. Id. §§ 404.1520c(b)(2), 416.920c(b)(2). Only where contrary medical opinions are equally persuasive in terms of both supportability and consistency is the ALJ required to discuss their relative persuasiveness in terms of the treatment/examining relationship, specialization, and other factors. Id. §§ 404.1520c(b)(3), 416.920c(b)(3). In addition, where a single medical source offers multiple opinions, the ALJ is not required to discuss each opinion individually, but instead may address all of the source's opinions "together in a single analysis." Id. §§ 404.1520c(b)(1), 416.920c(b)(1).

Moreover, while the ALJ must consider all of the relevant evidence in the record, Id. §§ 404.1520b(a)-(b), 416.920b(a)-(b), the ALJ need not discuss evidence from nonmedical sources, including, e.g., the claimant, the claimant's friends and family, educational personnel, and social welfare agency personnel. Id. §§ 404.1502(e), 404.1520c(d),

416.902(j), 416.920c(d).  And while the regulations require the ALJ to discuss the relative persuasiveness of all medical source evidence, Id. §§ 404.1520c(b), 416.920c(b), the claimant's impairments must be established specifically by evidence from an acceptable medical source, Id. §§ 404.1521, 416.921.

"Acceptable medical sources" are limited to physicians and psychologists, and (within their areas of specialization or practice) to optometrists, podiatrists, audiologists, advanced practice registered nurses, physician assistants, and speech pathologists.  Id. §§ 404.1502(a), 416.902(a).  Evidence from other medical sources, such as licensed social workers or chiropractors, is insufficient to establish the existence or severity of a claimant's impairments.  Id.  Finally, the ALJ need not discuss evidence that is "inherently neither valuable nor persuasive," including decisions by other governmental agencies or nongovernmental entities, findings made by state disability examiners at any previous level of adjudication, and statements by medical sources as to any issue reserved to the Commissioner.  Id. §§ 404.1520b(c), 416.920b(c).

### B.     Developing the Record

The ALJ has a duty to fully and fairly develop the record.  Heggarty v. Sullivan, 947 F.2d 990, 997 (1st Cir. 1991).  The Commissioner also has a duty to notify a claimant of the statutory right to retained counsel at the social security hearing, and to solicit a knowing and voluntary waiver of that right if counsel is not retained.  See 42 U.S.C. § 406; Evangelista v. Sec'y of HHS, 826 F.2d 136, 142 (1st Cir. 1987).  The obligation to fully and fairly develop the record exists if a claimant has waived the right to retained counsel, and even if the claimant is represented by counsel.  Id.  However, where an unrepresented claimant has not waived the right to retained counsel, the ALJ's obligation to develop a full and fair record

rises to a special duty.  See Heggarty, 947 F.2d at 997, citing Currier v. Sec'y of Health Educ. and Welfare, 612 F.2d 594, 598 (1st Cir. 1980).

      **C.**      **Medical Tests and Examinations**

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled.  20 C.F.R. § 416.917; see also Conley v. Bowen, 781 F.2d 143, 146 (8th Cir. 1986).  In fulfilling his duty to conduct a full and fair inquiry, the ALJ is not required to order a consultative examination unless the record establishes that such an examination is necessary to enable the ALJ to render an informed decision.  Carrillo Marin v. Sec'y of HHS, 758 F.2d 14, 17 (1st Cir. 1985).

      **D.**      **The Five-step Evaluation**

The ALJ must follow five steps in evaluating a claim of disability.  See 20 C.F.R. §§ 404.1520, 416.920.  First, if a claimant is working at a substantial gainful activity, she is not disabled.  20 C.F.R. § 404.1520(b).  Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled.  20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled.  20 C.F.R. § 404.1520(d).  Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled.  20 C.F.R. § 404.1520(e).  Fifth, if a claimant's impairments (considering her residual functional capacity ("RFC"), age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled.  20 C.F.R. § 404.1520(f).  Significantly, the claimant bears the burden of proof at steps one through four, but the

Commissioner bears the burden at step five. Wells v. Barnhart, 267 F. Supp. 2d 138, 144 (D. Mass. 2003) (five-step process applies to both SSDI and SSI claims).

In determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments and must consider any medically severe combination of impairments throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B). Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993).

The claimant bears the ultimate burden of proving the existence of a disability as defined by the Social Security Act. Seavey, 276 F.3d at 5. The claimant must prove disability on or before the last day of her insured status for the purposes of disability benefits. Deblois v. Sec'y of HHS, 686 F.2d 76 (1st Cir. 1982), 42 U.S.C. §§ 416(i)(3), 423(a), (c). If a claimant becomes disabled after she has lost insured status, her claim for disability benefits must be denied despite her disability. Id.

### E. Other Work

Once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy. Seavey, 276 F.3d at 5. In determining whether the Commissioner has met this burden, the ALJ must develop a full record regarding the vocational opportunities available to a claimant. Allen v. Sullivan, 880 F.2d 1200, 1201 (11th Cir. 1989). This burden may sometimes be met through exclusive reliance on the Medical-Vocational Guidelines (the "grids"). Seavey, 276 F.3d at 5. Exclusive reliance on

the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant non-exertional factors. Id.; see also Heckler v. Campbell, 461 U.S. 458 (1983) (exclusive reliance on the grids is appropriate in cases involving only exertional impairments, impairments which place limits on an individual's ability to meet job strength requirements).

Exclusive reliance is not appropriate when a claimant is unable to perform a full range of work at a given residual functional level or when a claimant has a non-exertional impairment that significantly limits basic work skills. Nguyen, 172 F.3d at 36. In almost all of such cases, the Commissioner's burden can be met only through the use of a vocational expert. Heggarty, 947 F.2d at 996. It is only when the claimant can clearly do unlimited types of work at a given residual functional level that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy. See Ferguson v. Schweiker, 641 F.2d 243, 248 (5th Cir. 1981). In any event, the ALJ must make a specific finding as to whether the non-exertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations.

1.   **Pain**

"Pain can constitute a significant non-exertional impairment." Nguyen, 172 F.3d at 36. Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment which could reasonably be expected to produce the pain or symptoms alleged. 42 U.S.C. § 423(d)(5)(A). The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which

the symptoms can reasonably be accepted as consistent with the objective medical evidence. Social Security Ruling ("SSR") 16-3p, 2017 WL 4790249, at *49462; 20 C.F.R. § 404.1529(c)(3).  In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the First Circuit's six-part pain analysis and consider the following factors:

> (1)   The nature, location, onset, duration, frequency, radiation, and intensity of any pain;
>
> (2)   Precipitating and aggravating factors (e.g., movement, activity, environmental conditions);
>
> (3)   Type, dosage, effectiveness, and adverse side-effects of any pain medication;
>
> (4)   Treatment, other than medication, for relief of pain;
>
> (5)   Functional restrictions; and
>
> (6)   The claimant's daily activities.

Avery v. Sec'y of HHS, 797 F.2d 19, 29 (1st Cir. 1986).  An individual's statement as to pain is not, by itself, conclusive of disability.  42 U.S.C. § 423(d)(5)(A).  However, the individual's statements about the intensity, persistence, and limited effects of symptoms may not be disregarded "solely because the objective medical evidence does not substantiate the degree of impairment-related symptoms."  SSR 16-3p, 2017 WL 4790249, at *49465.

### 2. Credibility

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding.  Rohrberg, 26 F. Supp. 2d at 309.  A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record.  See Frustaglia, 829 F.2d at 195.  The failure to articulate the reasons for discrediting subjective

pain testimony requires that the testimony be accepted as true.  See DaRosa v. Sec'y of Health and Human Servs., 803 F.2d 24 (1st Cir. 1986).

A lack of a sufficiently explicit credibility finding becomes a ground for remand when credibility is critical to the outcome of the case.  See Smallwood v. Schweiker, 681 F.2d 1349, 1352 (11th Cir. 1982).  If proof of disability is based on subjective evidence and a credibility determination is, therefore, critical to the decision, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding."  Foote v. Chater, 67 F.3d 1553, 1562 (11th Cir. 1995) (quoting Tieniber v. Heckler, 720 F.2d 1251, 1255 (11th Cir. 1983)).  Guidance in evaluating the claimant's statements regarding the intensity, persistence, and limiting effects of subjective symptoms is provided by SSR 16-3p, 2017 WL 4790249, at *49462 (Oct. 25, 2017).  It directs the ALJ to consider the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; any other relevant evidence; and whether statements about the intensity, persistence, and limiting effects of symptoms are consistent with the medical signs and laboratory findings.  SSR 16-3p, 2017 WL 4790249, at *49465.

## V.     APPLICATION AND ANALYSIS

### A.     The ALJ's Decision

The ALJ decided this case adverse to Plaintiff at Step 5.  Plaintiff was insured for DIB through June 30, 2007 and alleges disability onset as of January 1, 2006. (Tr. 20).  At Step 2, the ALJ found that through June 30, 2007 Plaintiff's nephrolithiasis with recurrent renal calculi, menometrorrhagia, hyperparathyroidism, depressive disorder, anxiety

disorder, attention deficit hyperactivity disorder (AHDH), and trauma-related disorder were "severe" impairments as defined in 20 C.F.R. § 404.1520(c). Id.

The ALJ found that Plaintiff retained an RFC as of June 30, 2007 for a significantly limited range of light work. (Tr. 24). Based on this RFC and VE testimony, the ALJ found at Step 4 that Plaintiff could not perform her previous work but denied benefits at Step 5 because she could perform a significant number of other light, unskilled jobs. (Tr. 31-33).

**B.      Plaintiff Has Shown No Reversible Error in this Case**

This is a procedurally complex case with a lengthy administrative record. It is a DIB claim, and Plaintiff was insured for DIB only through June 30, 2007. Thus, the relevant period under consideration for disability is extremely remote, i.e., the eighteen-month period from January 1, 2006 through June 30, 2007.

The record reflects that Plaintiff ceased working as an office manager in late 2003 due to several medical conditions. (Tr. 669, 681). Plaintiff reportedly advised her neurologist in 2009 that she left work "due to pregnancies." (Tr. 2895). She reported in a 2011 psychological evaluation that she left work at her father's insurance agency "because of medical complications during her first pregnancy." (Tr. 1240).

Plaintiff has had several bites at the apple to establish disability during the relevant 2006-2007 period. She previously filed unsuccessful DIB applications in 2011, 2016, and 2020. (Tr. 18, 665-666). The Commissioner accurately notes that, because Plaintiff did not appeal any of those prior denials, they were administratively final and subject to reopening only at the Commissioner's discretion and for limited reasons. See 20 C.R.R. §§ 404.905, 404.987(a). Plaintiff's fourth DIB claim was filed in November 2020 and is presently before the Court. (Tr. 179, 621-622). Plaintiff contends that the instant claim should not be barred

-13-

by res judicata because she was misdiagnosed and that she has "new and material" evidence supporting diagnosis of a rare condition called Ehlers-Danlos Syndrome ("EDS"). (Tr. 688).

However, contrary to Plaintiff's assertion, the record reflects that EDS was not a "new" diagnosis. The record indicates that Plaintiff was diagnosed with EDS in 2016. (Tr. 1248, 1251). EDS was identified and considered in Plaintiff's prior DIB applications that were denied in 2016 and 2020. (Tr. 247, 254, 784, 788, 805). Furthermore, EDS was a condition considered by the reviewing medical consultants in connection with those prior applications. (See Tr. 243, 247-250; Tr. 254-257).

Despite this history, Plaintiff was reasonably allowed another opportunity to make her case that she became disabled prior to June 30, 2007. Plaintiff's claim for this remote period was reviewed by several medical experts who all essentially found insufficient evidence to establish disability prior to June 30, 2007. (Tr. 181 – Dr. Quinn, February 2, 2021); (Tr. 186 – Dr. Mason, March 22, 2021); (Tr. 4651-4659 – Dr. Dhiman, January 13, 2022); and (Tr. 97-109 – Dr. Biles, March 3, 2022). The Commissioner concedes that Plaintiff's conditions were functionally limiting, and arguably disabling, from approximately 2011 forward (see e.g., Tr. 113-114, 4745) but argues that overall the experts found nothing in the record to support a disability finding prior to June 30, 2007.

Plaintiff contends that the "most important opinion evidence in the file" is the opinion of her primary care physician, Dr. Krusz. (ECF No. 9-1 at p. 26). She contends that the ALJ erred by failing to give "good reasons" for rejecting the opinion of Dr. Krusz and by demanding a greater level of explanation and clarity from her than required of the reviewing physicians. Id.

On August 12, 2021, Dr. Krusz completed an RFC questionnaire provided by Plaintiff's counsel. (Tr. 2338-2341). She opined that Plaintiff's impairments were effectively disabling and would result in excessive work absenteeism. (Tr. 2340-2341).[1] She further opined without explanation that Plaintiff was limited to this degree "since 2006." (Tr. 2341). On August 16, 2021, Plaintiff's counsel wrote Dr. Krusz and asked her to elaborate on her opinion and the presence of limitations prior to June 30, 2007. (Tr. 2343). It appears that Dr. Krusz hand wrote on the letter that Plaintiff "has had symptoms since 2006 which at the time were not diagnosed as [EDS]." Id.

The ALJ thoroughly discusses Dr. Krusz' opinions in her decision and did not find them persuasive "because they are not supported by the corresponding treatment records" and "not consistent with the record as a whole during the relevant period." (Tr. 30). The ALJ also reasonably faults Dr. Krusz for not supporting her longitudinal opinions with reference to medical records from the relevant period. Id. Plaintiff's counsel recognized the importance of obtaining contemporaneous records for the relevant period. (Tr. 719). However, despite being given a continuance (Tr. 160-161), it does not appear that those supporting records were submitted or are even in existence. (ECF No. 11 at pp. 5-6). Dr. Krusz was presented with a difficult task, i.e., to opine in 2021 on the extent of impairment in 2006-2007. In fact, Dr. Krusz opined that Plaintiff was significantly limited continuously "since 2006." (Tr. 2341). The difficulty of this task is highlighted by the inconsistency between Dr. Krusz' 2021 observation that, since 2006, Plaintiff's long-term, chronic pain restricted her from sitting or standing for more than thirty minutes and from functioning in

---

[1] Plaintiff and her husband visited Dr. Krusz on August 12, 2021 "to complete disability forms from her lawyer." (Tr. 2344). Dr. Krusz indicates that the form was "reviewed and completed with the patient and her husband." (Tt. 2348).

-15-

general (Tr. 2340-2341); yet Dr. Krusz noted at Plaintiff's annual evaluation in 2013 that she "[h]as been running two miles four to five times a week." (Tr. 2595). Dr. Krusz also opined that Plaintiff's impairments would "rarely" prevent her from carrying out simple tasks (Tr. 2340) but notes on the same day that Plaintiff has "difficulty with the simplest of tasks" and "[s]omething as simple as talking on the phone can cause her severe pain for multiple days." (Tr. 2345). In addition to being inconsistent statements, they are simply not supported by contemporaneous records for the relevant period.

Plaintiff's counsel makes numerous arguments for reversal in nearly seventy-five pages of briefing. However, all of these arguments fail for the same reason as his challenge to the weight given to Dr. Krusz' opinions. The arguments all lack record support for the relevant period. The ALJ provides good reasons for discounting the weight given to Dr. Krusz' 2021 questionnaire opinion purportedly covering the entire period back to 2006. The opinion is simply not well supported or consistent with other parts of the record as discussed above. The ALJ reasonably interpreted this complex and remote claim and reasonably assessed an RFC through June 30, 2007 for a significantly limited range of light work. Plaintiff has shown no reversible error on this record. Accordingly, the Court is compelled to recommend that the ALJ's Decision be affirmed.

## CONCLUSION

For the reasons discussed herein, I recommend that Plaintiff's Motion for Reversal of the Disability Determination (ECF No. 9) be DENIED and that the Commissioner's Motion to Affirm the Commissioner's Decision (ECF No. 11) be GRANTED. I further recommend that Final Judgment enter in favor of Defendant.

Any objections to this Report and Recommendation must be specific and must be served and filed with the Clerk of the Court within fourteen days of service of this Report and Recommendation.  See Fed. R. Civ. P. 72(b); DRI LR Cv 72.  Failure to file specific objections in a timely manner constitutes waiver of the right to review by the District Court and the right to appeal the District Court's decision.  See Brenner v. Williams-Sonoma, Inc., 867 F.3d 294, 297 n.7 (1st Cir. 2017); Santos-Santos v. Torres-Centeno, 842 F.3d 163, 168 (1st Cir. 2016).

 /s/ Lincoln D. Almond
LINCOLN D. ALMOND
United States Magistrate Judge
April 18, 2025